1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARY KAY TAYLOR,

　　　　　　　Plaintiff,

　　v.

UNIGARD INSURANCE COMPANY,

　　　　　　　Defendant.

CASE NO. C14-1654-RBL

ORDER

　　　THIS MATTER is before the Court on Plaintiff Taylor's Motion for Partial Summary Judgment [Dkt. #28], and Unigard's own Motion for Summary Judgment [Dkt. #39]. Taylor suffered a brain injury in a collision with an uninsured driver. She claims that her UIM insurer, Unigard, forced her to litigate to obtain the full benefits of her policy, in bad faith. She asserts Washington state law claims for violations of the Consumer Protection Act, the Insurance Fair Conduct Act, and the Washington Administrative Code. She seeks partial summary judgment on these claims, establishing that Unigard's conduct violated the requirements of these authorities, and that the "actual damages" she suffered were the policy limits that Unigard eventually paid, $500,000.

1    Taylor first suffered a head injury in an unrelated 2007 accident with another uninsured

2    driver. Unigard paid her then-limits of $100,000. She had cognitive injuries but continued to

3    work. Taylor purchased a new Unigard policy with $500,000 UIM limits. She suffered a second

4    head injury in a second accident, again with an uninsured motorist, in March, 2011. She made a

5    UIM claim and Unigard undertook its investigation of her claim, including the fact that she had

6    previously suffered a permanent brain injury[1]. Through counsel, Taylor made a policy limits

7    demand in December 2011. Unigard hired an attorney, Jeff Downer, to defend the other driver

8    (Wood) on the UIM claim. He corresponded with Taylor's attorney throughout the next year,

9    including requests for additional medical records and wage loss information, particularly with

10   respect to her injuries from the prior accident. Unigard hired an expert to review these records,

11   and in December 2012 made a $27,000 counteroffer, based on its position that most of Taylor's

12   head injury symptoms, and thus her damages, were caused by the prior accident. Taylor rejected

13   that offer and reiterated her demand for policy limits. Unigard continued to invite arbitration or

14   mediation.

15   Taylor sued Wood for negligence and Unigard for bad faith January 2013. Downer

16   initially represented Wood, and Karen Southworth Weaver represented Unigard. The case was

17   bifurcated and Taylor dismissed her claims against Unigard without prejudice. Discovery

18   proceeded throughout 2013. In December, after discovery and prior to trial, Unigard offered

19   policy limits on behalf of Wood, and Taylor accepted. She sued Unigard for bad faith and related

20   claims in September 2014.

21   ───────────────

22   [1] Unigard submits evidence that Taylor was having difficulty at work prior to the 2011
     accident. She reported that she was "hanging on by her fingernails" "crashing . . . on the verge"

23   and that she took FLMA leave to reduce her work load to 30 hours a week due to fatigue from
     that earlier injury. She told her employer she was going to seek additional treatment that would

24   require additional FLMA leave. [*See* Dkt. #33].

ORDER - 2

1    Taylor now seeks summary judgment on her claim that Unigard's handling of her UIM

2    claim was not reasonable as a matter of law. She also seeks a determination that the "actual

3    damages" caused by this unreasonable conduct are the policy limits that were ultimately paid.

4    Unigard emphasizes that in the UIM context, the insurer stands in the shoes of the other

5    driver, and does not have an enhanced duty of good faith to her, and does not have a duty to put

6    her interests on equal footing with its own. It argues[2] that there are numerous factual questions

7    about the reasonableness of its conduct in this context, and that there were factual issues about

8    the cause and extent of her injuries and damages throughout.

9    **A.  Summary Judgment Standard.**

10    Summary judgment is proper "if the pleadings, the discovery and disclosure materials on

11    file, and any affidavits show that there is no genuine issue as to any material fact and that the

12    movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether

13    an issue of fact exists, the Court must view all evidence in the light most favorable to the

14    nonmoving party and draw all reasonable inferences in that party's favor. *Anderson Liberty*

15    *Lobby, Inc*., 477 U.S. 242, 248-50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).

16    A genuine issue of material fact exists where there is sufficient evidence for a reasonable fact-

17    finder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the

18    evidence presents a sufficient disagreement to require submission to a jury or whether it is so

19    one-sided that one party must prevail as a matter of law." *Id*. at 251-52.  The moving party bears

20    the initial burden of showing that there is no evidence which supports an element essential to the

21    nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has

22

23    [2] Unigard has moved for summary judgment in its favor on the same question—it seeks a ruling as a matter of law that its handling of Taylor's UIM claim was reasonable given legitimate questions about whether her brain injuries were caused by the 2011 accident, or the 2007 one.

24    [*See* Dkt. #39]

ORDER - 3

1    met this burden, the nonmoving party then must show that there is a genuine issue for trial.

2    *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine

3    issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477

4    U.S. at 323-24.

5    **B.  Taylor's "Bad Faith" Claims.**

6            Taylor asserts the usual set of "bad faith" claims: she argues that Unigard had a duty to

7    act in good faith and to deal with her fairly, giving her interests equal consideration in all

8    matters. *See Tank v. State Farm*, 105 Wn.2d 381 385 (1986). She argues that Unigard had a

9    statutory duty of good faith, based on a fiduciary relationship creating a "heightened standard"

10   when contracting with its insured. RCW 48.01.030; s*ee St. Paul Fire and Marine v. Onvia*, *Inc*.,

11   165 Wn.2d 122 (2011). Taylor claims that Unigard violated these obligations, as well as the

12   similar WAC provisions making it an "unfair or deceptive act" to "compel a first party claimant

13   to initiate or submit to litigation . . . to recover amounts due under an insurance policy by

14   offering substantially less than the amounts ultimately recovered in such actions or proceedings."

15   WAC 284-30-330(7). She asserts a CPA claim and an IFCA claim, arguing that Unigard

16   unreasonably denied her "first party" claim for benefits—*see* RCW 48.30.015(1)—and seeks a

17   ruling that the "actual damages" she suffered as the result is the amount she ultimately recovered.

18           In support of each claim, Taylor argues that Unigard forced her into "relentless" litigation

19   for almost a year before paying the limits she had consistently demanded, on the eve of trial. She

20   denies that her 2007 injury was significant, or that it in any way caused the damages she suffered

21   in 2011. Other than the fact she ultimately obtained policy limits, her claim is based largely on

22   her position that Unigard internally "valued" her 2011 claim at just shy of the policy limits as

23   early as March 2011, and that the adjuster (Gragson) "requested settlement authority" at those

24   limits, nine months before Taylor made her UIM policy limits demand.

1    Unigard argues that viewed in the light most favorable to it, its handling of Taylor's UIM

2  claim was reasonable—indeed, it argues that its conduct was reasonable as a matter of law. It

3  points out that the initial "limits" demand did not include all of Taylor's medical records from

4  either the 2007 or 2011 accidents, and that as part of its investigation of the claim, it repeatedly

5  sought more information to back up Taylor's conclusory claim that the prior accident was not

6  related to her current injuries. It claims that causation was an issue throughout the case, and that

7  even Taylor's settlement demand included evidence that her injuries were caused by the earlier

8  accident. It also argues that Taylor's claimed wage loss was not clear, because it was not

9  immediately clear that she could not work again. Unigard accurately argues that an early

10  "reservation" of policy limits is fundamentally not an "evaluation" of the case at that level, and

11  that Taylor's claim Gragson "requested settlement authority" at policy limits the same month as

12  the accident is simply false.

13    Unigard points out that the violation of a WAC section is not an independent claim, and

14  that the issue on all of the claims is whether it acted in bad faith. (*Citing Wilson v Austin Mut.*

15  *Ins. Co*., 2014 U.S. Dist. LEXIS 101204 (W.D. Wa. 2014). It argues that it did not, because the

16  reasonableness of its "low" settlement offer is not measured solely against what it eventually

17  paid, but against the standard of whether it had a reasonable basis for it at the time. (*Id*.)

18    In an implicit admission that these are not typically summary judgment cases, the parties'

19  legal arguments are focused on the import of two UIM opinions resolving summary judgment

20  motions in this district: *Freeman v. State Farm Auto. Ins. Co*., 2012 WL 2891167, and *Morella v*

21  *Safeco Ins. of Illinois*, 2013 WL 156032.

22    *Freeman* is of little moment. Judge Jones denied the insurer's motion for summary

23  judgment. He concluded that, viewed in the light most favorable to Freeman, the evidence could

24

1   support a jury's determination that it had denied the claim without a reasonable basis, conducting

2   no investigation and offering nothing until just before he sued. There are lots of cases standing

3   for the proposition that summary judgment in not available where the reasonableness of one's

4   conduct is a question of fact.

5        In *Morella*, Safeco continued to offer $1500, even after it determined—through discovery

6   and analysis, not by reserving a given amount—that Morella's damages were indisputably far

7   more. There was no prior accident, and no causation issue. Morella got $62,000 at arbitration.

8   Judge Lasnik granted Morella's motion for summary judgment on his IFCA claim and on the

9   WAC violation, determining that the "lowball" offer had no reasonable basis as a matter of law,

10  and was effectively a denial of Morella's claim. He certified to the Washington Supreme Court

11  the question of whether the arbitration award was the measure of Morella's "actual damages,"

12  but the case settled before that issue was resolved.

13       This court need not reach the latter issue on this motion, because it cannot be said as a

14  matter of law that Unigard violated its duties to Taylor. Taylor's motion has two primary bases,

15  both of which are not correct. First, viewing the evidence in the light most favorable to Unigard,

16  is not factually true that Unigard determined early on that her damages were at or above the

17  policy limits; this case is different than *Morella* in that regard. Second, Taylor's repeated claim

18  that Unigard owed her an "enhanced duty" to put her interests on "equal footing" overstates the

19  Unigard's obligations in the UIM context. That is the general rule, to be sure. *See Am. States Ins.*

20  *Co. v. Symes of Silverdale, Inc*., 78 P.3d 1266, 1270 (2003); *Tank*, supra. But this "enhanced"

21  duty does *not* apply in the UIM context, where the insurer stands in the tortfeasor's shoes and

22  thus is in an adversarial relationship with its own insured. *Ellwein v. Hartford Acc. & Indem.*

23

24

1 | *Co.*, 142 Wash.2d 766, 15 P.3d 640, 647 (2001), *overruled in part on other grounds, Smith v.*
2 | *Safeco Ins. Co.*, 78 P.3d 1274 (2003).

3 |     Instead, to show bad faith, the insured must show the denial of benefits was
4 | "unreasonable, frivolous, or unfounded," as opposed to simply incorrect. *Kirk v. Mt. Airy Ins.*
5 | *Co.*, 951 P.2d 1124, 1126 (1998); *see also Kim v. Allstate Ins. Co.*, 223 P.3d 1180, 1189 n. 3
6 | (2009) (applying *Kirk's* "unreasonable, frivolous, or unfounded" standard to a bad faith, UIM
7 | claim.)  As Unigard argues, it was entitled to put Taylor to her proof on causation. And there was
8 | ample evidence that Taylor's injuries pre-dated the 2011 accident. After the 2007 accident, she
9 | demanded policy limits (then $100,000) based on a settlement package purporting to
10 | demonstrate that she had "permanent" cognitive deficits, and had already suffered an injury
11 | worth in excess of $500,000:

12 |     The special damages in this case alone will exceed the limits of coverage for the
13 | at-fault driver.  Based on the seriousness and ongoing nature of the injuries and
damages suffered by Mary Kay Taylor, including her traumatic brain injury and
permanent cognitive deficits, this case clearly has a value in excess of $500,000.000

14 | [Dkt. #33-1 at 16]

15 |     Taylor has not met her summary judgment burden of establishing that Unigard's conduct
16 | was unreasonable as a matter of law. As was the case in *Freeman,* a jury must decide Taylor's
17 | bad faith and CPA (and IFCA claims).

18 |     It follows that Unigard's Motion for Summary Judgment [Dkt. #40] must be denied for
19 | the same reason—though this is a closer question, viewed in the light most favorable to Taylor, a
20 | jury could determine that Unigard's conduct was not reasonable. Taylor need not respond to the
21 | pending Motion.

1    The Motions for Summary Judgment [Dkt. #s 28 & 39] are **DENIED**.

2    IT IS SO ORDERED.

3    Dated this 23rd day of September, 2016.

4

5                                        _____
                                         Ronald B. Leighton
6                                        United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24